## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH ALLEN WALKER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **v.** | ) | **JURY DEMANDED** |
| | ) | |
| **SHELBY COUNTY GOVERNMENT,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

1.      Plaintiff, Deborah Allen Walker, is a resident of Shelby County, Tennessee.

2.      Defendant, Shelby County Government, is a Tennessee governmental agency. The Summons and Complaint can be served on the Shelby County Mayor.

3.      This action is filed for unlawful termination of employment pursuant to 42 U.S.C. § 1981, as amended; the Tennessee Human Rights Act ["THRA"], TENN. CODE ANN. § 4-21-101, *et seq.*; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Each of the foregoing statutes provide in pertinent part that all employees should be protected from, *inter alia*, discrimination in employment and that all employees' interests in dignity and freedom from humiliation should be protected.

4.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Original Jurisdiction). The Court has pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 (Supplement Jurisdiction).

5.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) and (c).

6.      Defendant employs more than 500 employees.

7.    On or about June 16, 2021, Plaintiff was hired by Defendant in its Equal Opportunity Compliance Office ["EOC"] as the Chief Supplier Diversity Officer ["CSDO"]. Plaintiff is a black female. Plaintiff's job assignment regularly involved directing, planning, managing, and coordinating the supplier diversity activities in support of the Locally Owned Small Business program initiatives to ensure inclusion and equal opportunity in awarding purchasing contracts. Further, her role required her to work with the Purchasing Administrator to centralize procurement efforts and collaborate with the EOC Administrator to monitor contract compliance. Exhibit A, CSDO Job Description Report.

8.    According to Defendant's Job Description Report for CSDO, Plaintiff was under the direct supervision of the Board of Commissioners. However, under Defendant's EOC Organization Chart, Plaintiff's direct supervisor is the EOC Administrator, Shepperson Wilbun, Jr. (male) ["Wilbun"]. Exhibit B, EOC Organization Chart.

9.    Plaintiff was sufficiently qualified for the position. She is a licensed attorney in the State of Tennessee, had over 20 years of Human Resources experience, and served in the role of Administrator for Elected Officials of Shelby County for approximately 10 years.

10.    Beginning at the genesis of Plaintiff's employment with the EOC, Plaintiff was subjected to unfair employment determinations and actions that resulted in altering the terms and conditions of her employment. Said determinations and actions were taken by Wilbun.

11.    On or about August 8, 2022, Plaintiff sent an internal grievance to Wilbun per Shelby County's Personnel Management System, Section 300 – General Personnel Policies, Part VII – Harassment Complaint Procedures, p. 5 ["Harassment Procedures"]. Plaintiff chose to notify the offender, Wilbun, of the harassment he had frequently subjected her to. Exhibit C, Internal Grievance dated August 8, 2022; Exhibit D, Harassment Procedures.

12.    Plaintiff's internal grievance was grounded in four main points: (1) Wilbun's consistent and outspoken belief that a man should hold the CSDO position, (2) Wilbun's refusal to provide the necessary support and guidance Plaintiff needed to adequately perform her job tasks, (3) Wilbun's consistent assignment to Plaintiff of only menial tasks that could be performed by a clerical worker, and (4) Wilbun's ongoing explicit claims stated to Plaintiff that she only had her position because of her sexual relationship with Chairman Eddie Jones. Plaintiff does not and has never had a sexual or inappropriate relationship with Chairman Eddie Jones.

13.    In November 2022, Plaintiff was instructed to develop a Matrix regarding minority vendors and the services they provide as businesses. This task was clerical and tedious in nature. In the past, the CSDO never performed such a task as this one. When Plaintiff asked for assistance, she was met with hostility and disrespect from Wilbun.

14.    Although Human Resources was not in receipt of Plaintiff's grievance until September 2, 2022, which is approximately 25 days after the grievance should have been sent to Human Resources per the Harassment Procedures policy, Human Resources failed to issue a response to the grievance at all. The Shelby County Commission Chief Administrator, Qur'an Folsom (female), did their own investigation and did not issue a response until December 14, 2022, which is 128 days after the grievance was sent. No temporary or permanent action was taken as a result of Plaintiff's grievance.

15.    In Folsom's December 14, 2022, response, it was riddled with inconsistencies, false statements, and was completely inadequate. Notably, the response indicates that Wilbun was excluding Plaintiff and including the Contract Compliance Officer, Vincent Moody (male), in work that was deemed Plaintiff's work. Exhibit E, Folsom's Response dated December 14, 2022.

16.     On or about December 20, 2022, Plaintiff responded to Folsom's response detailing the false statements and pointing out numerous policy violations. In Plaintiff's meeting with Folsom, she felt pressured to not escalate her grievance and was told there would be no recommendation that Plaintiff be fired because of her grievance. Exhibit F, Plaintiff's Response dated December 20, 2022.

17.     Upon information and belief, Wilbun was never issued any discipline for his inappropriate behavior and repeated violation of policy.

18.     Following this sham investigation, Plaintiff was isolated, belittled, and disrespected by Wilbun and his staff at his direction.

19.     On or about June 22, 2023, Plaintiff emailed Folsom regarding Wilbun's continued inappropriate behavior. Plaintiff made three points: (1) Wilbun was still refusing to provide Plaintiff with the support she needed to adequately perform her job, (2) Wilbun and his office continued to exclude Plaintiff from training and from other important meetings, and (3) Wilbun continued to assign Plaintiff menial tasks that did not fall under her job responsibilities. Plaintiff stated, "I feel like I am an island to myself." Exhibit G, Plaintiff's Email dated June 22, 2023.

20.     Plaintiff's response from Folsom was that Wilbun had been spoken with regarding the role that the CDSO should take on. It is unclear why Wilbun would not already be aware of the CDSO role responsibilities and why no further action was taken to address the ongoing issues.

21.     Wilbun's actions were both severe and pervasive. Plaintiff reasonably perceived her work environment as hostile. She was regularly exposed to Wilbun's unprofessional behavior with no protection from Defendant. Wilbun's actions were deliberate, cruel, and personally directed toward Plaintiff because she is female.

22.    As a direct and proximate result of the offensive and discriminatory behavior of Wilbun, the continuing and escalating hostile environment, and the retaliation, Plaintiff became severely anxious and began to experience high blood pressure. She could not manage the stressors and the emotional suffering without help. She sought medical and psychological treatment, which has continued to the present.

23.    Plaintiff's mental and physical health was affected greatly throughout her tenure at the EOC. Plaintiff's physician recommended Plaintiff resign from her position with the EOC. With her health continuing to decline, Wilbun's inappropriate behavior continuing to escalate, and Defendant's failure to take any actions, on or about September 15, 2023, Plaintiff submitted her resignation letter to remove herself from the ongoing discrimination and hostile work environment. Exhibit H, Michelle A. Shelton, M.D. letter dated August 30, 2023.

24.    Plaintiff was constructively discharged on September 30, 2023.  Her working conditions had become so intolerable that she reasonably felt compelled to resign. Her resignation was a reasonably foreseeable consequence of the blatant discrimination based on her sex, and the overt hostile environment.

25.    On or about August 29, 2023, the EEOC's right to sue letter was issued and received by Plaintiff. Exhibit I, Right to Sue Letter.

26.    As a direct and proximate result of the discriminatory acts set forth above, Plaintiff has suffered the following injuries, including but not limited to:

     a.  embarrassment;

     b.  humiliation;

     c.  loss of self-esteem;

     d.  increased anxiety;

e.  damage of reputation;

f.  loss of concentration;

g.  feelings she has lost control of her life and her career;

h.  sleeplessness; and,

i.  depression.

27.   The foregoing injuries set forth have been suffered and will continue to be suffered into the foreseeable future.

28.   Because of her constructive discharge, Plaintiff is now suffering an on-going loss of wages. Plaintiff had planned to work as long as she was able. She should be compensated for her wage losses and all other benefits she would have been entitled to had she remained employed.

29.   Plaintiff should be made whole for all injuries and losses suffered by Plaintiff as a proximate result of Defendant's unlawful acts.

30.   Defendant has intentionally, willfully, and/or recklessly violated Plaintiff's rights. An award of punitive damages is appropriate under the law.

## COUNT I

31.   The allegations contained in paragraphs 1 through 30 are incorporated by reference into this Count I.

32.   The THRA, TENN. CODE ANN. § 4-21-401, *et seq.*, states in pertinent part that all employees should be protected from, *inter alia*, discrimination and that all employees' interests in dignity and freedom from humiliation should be protected.

33.   Plaintiff's termination was based on her sex (female) in violation of THRA.

34.   Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, all benefits, prejudgment interest, tax gross-up, attorney's fees and expenses.

## COUNT II

35.    The allegations contained in paragraphs 1 through 30 are incorporated by reference into this Count II.

36.    42 U.S.C. § 1981, as amended, states in pertinent part that all employees should be protected from, *inter alia*, discrimination that all employees' interests in dignity and freedom from humiliation should be protected.

37.    Plaintiff's termination was based on her sex (female) in violation of 42 U.S.C. § 1981, as amended.

38.    Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. Because of Defendants' willful and intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT III

39.    The allegations contained in paragraphs 1 through 30 are incorporated by reference into this Count III.

40.    Plaintiff filed a Charge of Discrimination (No. 25A-2023-00196) with the Tennessee Human Rights Commission ["THRC"] on or about December 22, 2022.

41.    On August 29, 2023, the EEOC issued a Notice of Right to Sue. A true and correct copy of the foregoing notice is attached hereto as Exhibit I.

42.    Plaintiff's THRC Complaint was timely filed, and Plaintiff exhausted all of her administrative remedies on her charge. Plaintiff has timely filed this complaint within 90 days of receiving the Notice of Right to Sue.

43.     Plaintiff's termination was based on her sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

44.     Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. Because of Defendant's willful and intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT IV

45.     The allegations contained in paragraphs 1 through 30 are incorporated by reference into this Count IV.

46.     Plaintiff engaged in protected activity by filing grievances against Defendant's management for discrimination, hostile work environment, and retaliation.

47.     In response, Defendant took adverse employment actions against Plaintiff in violation of the anti-retaliation provisions of Title VII.

48.     Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. Because of Defendant's willful and intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages against Defendant.

## COUNT V

49.     The allegations contained in paragraphs 1 through 30 are incorporated by reference into this Count V.

50.     Plaintiff engaged in protected activity by filing grievances against Defendant's management for discrimination, hostile work environment, and retaliation.

51.     In response, Defendant took adverse employment actions against Plaintiff in violation of the anti-retaliation provisions in 42 U.S.C. § 1981.

52.     Accordingly, Plaintiff is entitled to a damages award against Defendant for all back pay, front pay, lost benefits, prejudgment interest, tax gross-up, attorney's fees, and expenses. Because of Defendant's willful and intentional conduct and reckless disregard for Plaintiff's federally protected rights, Plaintiff is entitled to an award of punitive damages against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1.     The Court order Defendant to make Plaintiff whole for all lost wages and fringe benefits, back pay, loss of earning capacity, front pay, and emotional distress relating to Defendant's wrongful acts of discrimination.

2.     The Court order Defendant to pay prejudgment interest, tax gross-up, costs, and attorneys' fees.

3.     The Court award Plaintiff all equitable relief and injunctive relief as may be appropriate including back pay and benefits and front pay.

4.     The Court award Plaintiff punitive damages.

5.     The Court award Plaintiff liquidated damages.

6.     The Court grant Plaintiff all other relief to which she is entitled.

7.     Plaintiff demands a jury trial.

Respectfully submitted,

/s/ Alexandria R. Scott
Ralph T. Gibson (BPR #14861)
Alexandria R. Scott (BPR #39464)
GIBSON PERRYMAN LAW FIRM
*Attorneys for Plaintiff*
5100 Poplar Avenue, Suite 2117

Memphis, Tennessee 38137
(901) 526-0412
Ralph@GibsonPerryman.com
Alex@GibsonPerryman.com

# Shelby County Government

Job Description Report

**Job Title:** **Chief Supplier Diversity Officer –
CONTRACT COMPLIANCE (EOC)**



**Basic Information**

| Effective Date: | 8/17/2017 | Revised Date: | | 12/15/2017 |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Department: | Equal Opportunity Compliance | Supervises: | 0 |
| Classification: | Exempt | Pay Basis: | Salary |
| Reports To: | None | Pay Status: | Appointed |
| Approved By: | Debbia Strong | Pay Frequency: | Semi-Monthly |
| Job Grade: | 60 | Salary Range: | $7,342.33 Monthly - Salary Commensurate with Experience and Education |

**Position Summary**

Works under the direct supervision of the Board of Commissioners to carry out functions specifically related to County wide initiatives to increase the amount of business contracted with diverse suppliers. Directs, plans, manages and coordinates supplier diversity activities in support of the Locally Owned Small Business (LOSB) program initiatives to ensure inclusion/equal opportunity in the award of purchasing contracts and works in conjunction with the Purchasing Administrator to centralize procurement efforts. Provides assistance and support to the small business community in the certification and bidding process of County contracts for goods and services. Ensures contract compliance with the Minority and Woman Business Enterprise (M/WBE) program initiatives.

Pay Grade: 60

**Minimum Qualifications**

100.00    1. Seven (7) years' professional business experience in analytical/quantitative supplier purchasing, vendor relations activities, program/project management, problem solving and budget planning experience.

2. Bachelor's degree in public administration management, business, finance, supply chain or other quantitative discipline.

3. An equivalent combination of related education and/or experience.

4. Master's degree in business administration preferred.

5. PROOF OF EDUCATION, TRAINING, AND/OR EXPERIENCE IS REQUIRED.



**Duties and Responsibilities**

1. Manages the County's ordinance commitment for contracts with small business owners, and promotes and supports the LOSB and other procurement programs and goals via outreach, in-house certification and compliance initiatives.

2. Works with the EOC Administrator to monitor contract compliance including Operations and Maintenance (O&M), design and construction, and Capital Improvement Program (CIP) contracts. Reviews contracts to determine percentage goals for LOSB and other procurement programs participation, and to increase diverse spending in County contracting.

3. Identifies and prequalifies diverse suppliers for upcoming bid and matchmaking opportunities for the LOSB program. Assists bidders in contracting compliance issues and requirements; analyze problem areas and help resolve issues and disputes.

4. Develops and implements procedures and standards for the LOSB program as outlined in approved resolutions and ordinances. Utilizes process improvement techniques to implement technological solutions to data receipt, input, and reporting.

5. Creates and launches press releases and marketing campaigns to identify qualified diverse suppliers and ensures that the M/WBE and LOSB programs are featured on radio, TV, and/or the Internet. Schedules business seminars for LOSBs and other procurement programs in collaboration with other business experts to assist in increasing diverse business participation.

6. Maintains an understanding of supplier diversity market intelligence and internal metrics. Interfaces regularly with county purchasing department to understand Shelby County Government's current vendor engagements and pipeline opportunities for diverse businesses and to apprise them of qualified diverse businesses.

7. Oversees the annual LOSB and other procurement programs reporting; develops and uses metrics to measure performance to goal. Provides monthly reports of the County's compliance with the LOSB's and other procurement programs' goals to the Shelby County Board of Commissioners.

8. Manages communication process with LOSB and other procurement programs vendors. Communicates with internal department and agencies, as well as external partners, stakeholders, etc. to ensure compliance with the LOSB and other procurement programs.

9. Evaluates diverse suppliers' procurement opportunities; attends various organizations' group events to stimulate the increased participation of small businesses procurement opportunities with Shelby County Government.

10. Develops processes and governance in partnership with sourcing and internal partners that ensure maximizing opportunities for diverse suppliers.

11. Performs other related duties as required or directed.

**Knowledge, Skills and Abilities**

KSAs and others

1. Ability to make oral and written reports and public presentations.

2. Attention to details is a must.

3. Analytical approach to problem solving, with a focus on managing a team environment with attention to results and with a sense of urgency.

4. Strong project and process management skills, with the ability to handle multiple vendors, projects and a wide range of tasks.

5. Proficiency with applications: Excel, Word, PowerPoint and/or other office tools.

6. Practical knowledge and skill in interpreting, explaining, developing and applying procedures.

7. Demonstrated competency in strategic thinking and leadership with strong abilities in relationship management.

8. Excellent Human Relations, negotiating and communication skills, both written and verbal.

9. Ability to interact effectively with various levels of management.

10. Excellent analytical, process/project management skills.

11. Proficiency with applications: Excel, Word, PowerPoint and/or other office tools.

12. Ability to innovate and produce high quality results and sourcing solutions across multiple categories on a consistent basis.

**Special Requirements**

**Disclaimer**

_____      _____

HR Signature / Date                                                  Hiring Manager Signature / Date



EXHIBIT B

EXHIBIT

C



# BOARD OF COMMISSIONERS OF SHELBY COUNTY
## OFFICE OF EQUAL OPPORTUNITY COMPLIANCE

August 8, 2022

Shepperson 'Shep' Wilbun
Administrator
Equal Opportunity Compliance Office
Shelby County Government
160 N. Main Street, Suite 200
Memphis, TN 38103

Re:    Internal Grievance:    Discrimination based upon Gender and Age
Harassment/Sexual Harassment
Hostile Work Environment

Dear Mr. Wilbun:

I was appointed to the Equal Opportunity Compliance (EOC) Office on June 16, 2021. Since that time, you have in no uncertain terms made it clear that I am not welcomed in this department, and more specifically, in the position I currently hold as Chief Supplier Diversity Officer (CSDO). I feel that am being discriminated against based upon my gender (female) and age. In addition, I am being subjected to harassment and/or sexual harassment resulting in a hostile working environment. You have verbally expressed to me and others that you feel that a man should hold the CSDO position. You have made it no secret that you want the current Contract Compliance Officer, as the CSDO.

I am a 63-year-old woman. I have a Juris Doctor Degree and am licensed to practice law in the State of Tennessee. I have over 30 years of legal experience and over 20 years of Human Resources Administration experience. I am recognized as a Senior Certified Professional in Human Resources by the Society of Human Resources Management (SHRM). In addition, I have served in the role of Administrator for Elected Officials of Shelby County for the past 10 years. The Contract Compliance Officer on the other hand, is a younger male with less education, less administrative level experience, and to my knowledge holds no relevant specialty certifications.

Based upon a recent conversation with a co-worker, I was told that you communicated with them that as soon as the incoming class of Commissioners were seated you were going to "set me up" and lobby to have me removed from my position and replaced with the current Contract Compliance Officer. This communication is consistent with your treatment towards me since the inception of my employment with this office.

As CSDO, I am primarily responsible for directing, planning, managing and coordinating the supplier diversity activities in support of the Locally Owned Small Business (LOSB) program initiatives to ensure inclusion/equal opportunity in the award of purchasing contracts and to work

in conjunction with the Purchasing Administrator to centralize procurement efforts. (CSDO Job Description Position Summary, revised date 12/15/2017). In addition, the CSDO is to collaborate with the EOC Administrator to monitor contract compliance including Operations and Maintenance (O&M), design and construction, and Capital Improvement Program (CIP) contracts. (Job Description Duties and Responsibilities, paragraph 2).

From the start of my employment, I have asked to meet with you to discuss my position. To this date, you have never sat down and talked with me about the duties and expectations of my job. Whenever I approach you in your office for conversation, you refuse to acknowledge me, keep your head turned away from me, facing your computer, and just mutter, "yes", without facing me.

On July 19, 2021, I emailed a request, and carbon copied you, to meet with the Purchasing Administrator, to discuss the roles of the Purchasing Department and the CSDO in the procurement processes as set forth in the CSDO job description. You immediately directed me to cancel the meeting with the Purchasing Administrator until such time as you could be included. That time never materialized.

Instead, you have assigned the Contract Compliance Officer many of the duties of the CSDO in that he works directly with you and the Purchasing Administrator in determining percentage goals for LOSB and other procurement programs participation, and to increase diverse spending in County contracting, among other duties spelled out in the CSDO job description.

You relegate me to performing menial tasks, such as substituting for the front desk receptionist when he is on break, making copies, and taking notes at meetings for you. Most recently, on July 18, 2022 you saw me at the elevator and asked where I was going. I replied that I was going to the Commission Meeting to hear the presentation of the MWBE Ordinance for third reading. You instructed me to go back into the office and assist your Executive Secretary with making copies and organizing binders. I complied with your request, however, she told me that she was recording the Commission Meeting and did not have time to discuss making copies at that time. I always do as you instruct without complaint or protest, though other lower classified employees are available to perform such duties, both men and women. To my knowledge, you have not requested such tasks from the men in the office who are at or above a grade 55 job classification. My job classification is grade 60.

On June 9, 2022, when you developed the revised EOC Organization chart, you told me that the Contracts Compliance Officer would not be in favor of reporting to me, so you were going to be his direct report. Although customarily the Contract Compliance Officer has reported to the CSDO. Based upon information received, when you held the position of CSDO the Contract Compliance Officer reported directly to you.

I am also being subjected to hostile working conditions from your behaviors towards me. Upon my employment to this office I was advised by co-workers that you stated that you were going to shut me out, marginalize and ostracize the "implant" to make me appear un-needed. You did, and continue to do, just that.

In July 2021, you met with me and verbally expressed concern about the Investigators leaving every work day at or around 11:30 am or so to go to "the field". You assigned me to be the liaison over the EOC Employment Investigations Unit. You directed me to attend some of the internal and external interviews/investigations of the team to make sure they were indeed working during that time. Pursuant to your request, I met the investigators at an external meeting on or around July 13, 2022. The next day, you called an impromptu meeting with the investigators. It was a rather short meeting. You stated that you called the meeting to clarify my role with the office. You stated, "Let me get this straight, Renee Allen-Walker is not anyone's supervisor. I, Shep Wilbun, am the **ONLY** supervisor in this office. You guys (investigators) are doing a wonderful job, keep up the good work". The meeting ended. I did not understand the about face, nor the open hostility that you exhibited towards me in the presence of my co-workers.

On October 18, 2021, the City of Memphis hosted an Inter-Governmental Consortium Meeting. I was not invited to attend. However, such outreach meetings are directly related to my job responsibilities as the CSDO. You asked the Administrative Aide if she would drive you and the Contract Compliance Officer to the meeting. I heard the Administrative Aide ask whether you were inviting the CSDO and I heard you reply, "No, I am not." My co-workers coaxed me into coming to the meeting notwithstanding your attempts to exclude me and warned me not to allow you to "ostracize" me. I went to the meeting without an invitation or notice from you.

When I am invited to meetings you usually request that the Administrative Aide and I take notes. You often assign us to work together in organizing meetings, making copies and organizing binders. You have yet to work with me and assist me in performing any of my duties as CSDO. The Contract Administrator and you continue to perform the duties of that role to my exclusion.

I continue to be excluded from conversations that directly affect my performance as CSDO. You hold privately held sessions with the Contract Compliance Officer on such matters. Again, On July 29, 2022 you excluded me out of email communications that involved the proposed MWBE Ordinance. The emails were addressed to the Contact Compliance Officer and the Purchasing Administrator. I have been excluded from conversations, input, regarding the proposed MWBE Ordinance. The MWBE program would be directly under the purview of the CSDO.

Since the beginning of my appointment with EOC you have openly inquired about the nature of my relationship with Chairman Eddie Jones, who appointed me to the CSDO position. In fact, you have said to me repeatedly, "I do not know the nature of your relationship with Chairman Jones". Other co-workers have heard you loudly lament, "I do not whether she is his girlfriend or one of his other women"; as if I must be one or the other to get this position. I explained to you that I was recommended for this position by judges and other elected officials.

Along with that, earlier in the spring there was a meeting called by Chairman Jones with some Lowes' Home Improvements representatives. You saw me while waiting on the elevator and asked me to come to the meeting with you. You stated, "Yeah, Chairman Jones is going to be excited to see you". You repeated that statement, then gave a snarky chuckle. Again, I felt very insulted and disgusted by the statement and insinuation.

Although my job description states that the CSDO works under the direct supervision of the Board of Commissioners, I was assigned to work under you in the Office of the EOC. You approve my leave, travel and training requests and direct all of the duties of the office including the CSDO responsibilities. In practice you are my direct report and I respect you as such. I am honest in my dealings, professional and accountable to you and this office. When I need to be off work for any reason, I make sure to obtain your approval to use my sick or annual leave, as appropriate. I am where I am supposed to be during business hours, unlike other employees who are out of the office for weeks/months at a time "working from home" because they cannot find a babysitter; and for various other personal reasons. You allow most of the employees to "work from home" rather than utilize their earned sick or annual leave. This is a common occurrence in this office. In addition, there are two employees who work ½ days 4 days a week and do not report to work at all at least one day a week. Employees have admitted to me that they do not always use their leave time when they are away from the office. I was told it was one of the perks of working for the EOC.

This is the Office of Equal Opportunity Compliance. This office enforces equal opportunity and fairness in employment and procurement opportunities within Shelby County Government. I am disappointed of how I have been denigrated and excluded by you in this office. This constant and continuous bullying that I have endured for over a year has caused lasting effects negatively impacting my work environment as well as my personal health. Publicly insinuating an inappropriate relationship with a public official on more than one occasion; degrading my job activities to reflect that of your secretary or desk monitor; continuously ignoring my efforts to inquire and participate in activities directly impacting my job duties; verbally expressing your intent to remove me from this position and replacing it with a younger male despite comparative qualifications; and placing untimely work on my desk outside of my purview due to your approval of those responsible for such duties to be away from the office for an extended amounts of time has caused me public humiliation, physical sickness, loss of sleep, and extreme anxiety. These actions not only contradict the literal purpose of this office, but they have deeply impacted my home and work life.

I respectfully request that you not share or discuss this communication with other employees of this office, as it could further inflame the hostilities toward me.

I am requesting to be able to come to work, do my job, and be free of harassment, hostility, and threats to have me terminated for no valid reason; to be treated fairly and with dignity and respect; and to be recognized as a professional level employee of this office.

Regards,

Renee Allen-Walker
Chief Supplier Diversity Officer



**PERSONNEL MANAGEMENT SYSTEM**

SECTION:    300 – General Personnel Policies    POLICY NUMBER: 320

SUBJECT:    **Harassment Policy (sex, race,**    PAGE 2 of 10
**color, religion, national origin,**
**age, gender and disability)**

EFFECTIVE DATE: 2/22/99    REVISION DATE: _____

IV.    **DEFINITIONS**

A.    "Shelby County Government" — For purposes of this policy, the term includes Shelby County elected officials whose employees are in the classified or unclassified positions in the Civil Service System.

B.    "Appropriate Management Representative" or "Management Representative" - For purposes of this policy, the terms include any Shelby County elected official or his/her designee. The term can also include line supervisors, supervisors, managers, administrators, and division directors, (or comparable classifications within an elected official's organization.)

C.    "Management" - For purposes of this policy, the term includes any person with supervisory authority over other employee(s) and specifically includes line supervisors, supervisors, managers, administrators, division directors (or the comparable classification within an elected official's organization) or an elected official.

D.    "Shelby County Human Resources Department" means the department formerly referred to as Shelby County Department of Personnel.

E.    "Human Resources Administrator"  -For purposes of this policy, this term means the Administrator of the Shelby County Human Resources Department.



EXHIBIT
D



# PERSONNEL MANAGEMENT SYSTEM

| | | |
|---|---|---|
| SECTION: | 300 – General Personnel Policies | POLICY NUMBER: 320 |
| SUBJECT: | **Harassment Policy (sex, race, color, religion, national origin, age, gender and disability)** | PAGE 3 of 10 |

EFFECTIVE DATE: 2/22/99          REVISION DATE: _____

---

**V.   SEXUAL HARASSMENT**

    A.   <u>Sexual Harassment Definition</u> - Behavior that includes, but is not limited to **unwelcome** sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature **when**

       (1)   Submission to such conduct is made either implicitly or explicitly a term or condition of employment; or

       (2)   Submission to or rejection of such conduct by an individual is used as a basis for employment decisions affecting such individual; or

       (3)   Such conduct has the purpose or effect of unreasonably interfering with the individuals work performance or creating an intimidating, hostile, or offensive working environment.

       (4)   Examples of such behavior include, but are not limited to:

> - unwanted sexual advances;
> - unwelcome letters, phone calls, or materials of a sexual nature;
> - unwelcome pressure for dates;
> - demands for sexual favors in exchange for favorable treatment or continued employment;
> - repeated sexual jokes or humor with sexual overtones;
> - unwanted flirtations;
> - unwelcome sexual advances or propositions;
> - verbal abuse of a sexual nature;
> - graphic or verbal commentary about an individual's body, sexual prowess or sexual deficiencies
> - leering, whistling, pinching, or other inappropriate touching;
> - unnecessary touching or brushing against another's body
> - attempted or actual kissing or fondling;
> - implied or overt sexual threats;
> - sexual assault, coerced sexual acts, or rape;
> - suggestive, insulting, obscene, or demeaning comments or gestures of a sexual nature; or
> - display in the workplace of sexually suggestive objects or pictures.



## PERSONNEL MANAGEMENT SYSTEM

| | | |
|---|---|---|
| SECTION: | 300 – General Personnel Policies | POLICY NUMBER: 320 |
| SUBJECT: | **Harassment Policy (sex, race, color, religion, national origin, age, gender and disability)** | PAGE 4 of 10 |

EFFECTIVE DATE: 2/22/99          REVISION DATE: _____

B.  Behavior included in the above section of examples or behavior related or similar in nature is unacceptable whether it occurs in the workplace itself or in other work-related settings such as business trips, training seminars and other County related events.

C.  Sexual harassment can involve conduct from male to female, female to male, female to female, or male to male. Sexual harassment can occur from supervisor to subordinate, subordinate to supervisor, coworker to coworker, non-employee to employee and vice versa.

D.  <u>Consenting Romantic and/or Consenting Sexual Relationships</u> -

    1.  <u>Coworkers</u> - Consenting romantic and/or consenting sexual relationships between employees or between a supervisor or management representative and his/her subordinate may lead to unforeseen complications. Each employee should be aware of the possible risks of even a consensual romantic and/or sexual relationship.

        An Appropriate Management Representative within the work unit may alter the responsibilities or assignments of parties engaged in a consenting relationship to diminish the professional contact they may have with each other when there is even a remote possibility that such a relationship could interfere with the performance of work duties or interfere with the overall productivity of any work unit.

    2.  <u>Supervisor/Management Representative/ Subordinate -</u> Consenting romantic and/or consenting sexual relationships between a supervisor or management representative and his/her subordinate are strictly prohibited.

E.  <u>Sexual Favoritism</u> - Employment decisions based on sexual favoritism is strictly prohibited.



**PERSONNEL MANAGEMENT SYSTEM**

SECTION:    300 – General Personnel Policies          POLICY NUMBER: 320

SUBJECT:    **Harassment Policy (sex, race,**          PAGE 5 of 10
                    **color, religion, national origin,**
                    **age, gender and disability)**

EFFECTIVE DATE: 2/22/99          REVISION DATE: _____

---

## VI.    RACE, COLOR, RELIGION, NATIONAL ORIGIN, AGE, GENDER OR DISABILITY HARASSMENT

A.    <u>Race, Color, Religion, National Origin, Age, Gender or Disability Harassment Definition</u> - Behavior reasonably be perceived as denigrating or showing hostility toward an individual because of the individual's race, color, religion, national origin, age, gender, disability or other status protected by law.

Examples of such harassment could include, but are not limited to:

➢ Oral or written epithets, slurs, negative stereotyping or intimidating acts based on an individual's protected status;
➢ Gestures or conduct rooted in prejudice or other considerations that signal contempt toward others based on the individual's protected status;
➢ Circulating or posting of writing or graphic materials that show hostility toward an individual because of his or her protected status.

B.    <u>Investigation of Race, Color, Religion, National Origin, Age, Gender or Disability Harassment</u> - Shelby County Government's Office of Equal Opportunity Compliance will continue to have primary responsibility for investigation and resolution of such complaints.

## VII.    HARASSMENT COMPLAINT PROCEDURES

A.    <u>Notification of Complaint</u> - An Employee of Shelby County Government has available four (4) basic avenues for making a harassment complaint. They are:  (1) Notification of the Offender, (2) Notification of Appropriate Management Representative within the work unit, (3) Shelby County Human Resources Department, (4) Notification of Shelby County EOC.  Employees are encouraged to utilize any or all of these internal methods of notification.

1.    <u>Notification of Offender</u> - Any employee who believes that he or she is being harassed in violation of this policy is encouraged to clearly and promptly notify the offender his/her conduct is unwelcome.

2.    <u>Notification of Appropriate Management Representative within the work unit</u> - If the employee is uncomfortable with speaking with the offender, or if the



**PERSONNEL MANAGEMENT SYSTEM**

SECTION:    300 – General Personnel Policies    POLICY NUMBER: 320

SUBJECT:    **Harassment Policy (sex, race,**    PAGE 6 of 10
            **color, religion, national origin,**
            **age, gender and disability)**

EFFECTIVE DATE: 2/22/99        REVISION DATE: _____

confrontation does not end the harassment, he/she should notify one (or more) of the following:

    a.    Immediate Supervisor; or
    b.    Department Manager; or
    c.    Department Administrator; or
    d.    Division Director (or comparable classification within an elected official's organization); or
    e.    Elected Official (or his/her designee)

3.    <u>Shelby County Human Resources Administrator</u> - At any point, an individual may report the conduct directly to the Shelby County Human Resources Administrator.

3.    <u>Shelby County Equal Opportunity Compliance Office</u> - An employee may contact the Shelby County Equal Opportunity Compliance office with questions, concerns, or complaints concerning harassment.

> **EMPLOYEES MAY UTILIZE ANY OF THE NOTIFICATION OPTIONS LISTED ABOVE.    AN EMPLOYEE MAY UTILIZE ANY OTHER METHOD OF NOTIFICATION MECHANISM AVAILABLE UNDER STATE OR FEDERAL LAW.**

B.    <u>Management Representative's Responsibility Upon Receipt of Harassment Complaint</u> - A Management Representative has three (3) responsibilities upon receipt of an oral or written complaint of harassment:

    1.    If a Management Representative receives a harassment complaint, he or she must immediately (before the close of business) notify the Shelby County Human Resources Administrator, and

    2.    The Management Representative must obtain <u>or</u> prepare a written description of the conduct. The Appropriate Management Representative should make an effort to have the complaint signed by the complainant; however a signature is not required.  In the event the complainant should not wish to sign the complaint, the refusal to sign should be documented.

    3.    A Management Representative must submit a copy of the written description of the complaint with the Administrator of the Shelby County   Human



**PERSONNEL MANAGEMENT SYSTEM**

| | | |
|---|---|---|
| SECTION: | 300 – General Personnel Policies | POLICY NUMBER: 320 |
| SUBJECT: | **Harassment Policy (sex, race, color, religion, national origin, age, gender and disability)** | PAGE 7 of 10 |
| EFFECTIVE DATE: 2/22/99 | | REVISION DATE: _____ |

Resources Department. The Management Representative should make every effort to submit such report with Human Resources **within 2 workdays of the initial complaint.**

**NOTE: Nothing in this policy is intended to interfere with the normal and customary chain of command required within an office.**

C.  Shelby County Human Resources Administrator's Responsibility Upon Receipt of Harassment Complaint - If at any time an individual makes a harassment complaint to the Shelby County Human Resources Administrator, the Administrator or his or her designee will obtain a written statement. Upon receipt of a harassment complaint, Shelby County Human Resources will promptly notify the Appropriate Management Representative within the work unit.

D.  Time for Employee Reporting Complaint of Harassment - Prompt reporting of complaints is strongly encouraged as it allows for rapid response and resolution of objectionable behavior or conditions of the complaining individual and any other affected employees.

## VIII.   INVESTIGATION

A.  Investigation Process - After notification of a complaint, the Management Representative will consult with the Shelby County Human Resources Administrator and an individual will be designated to investigate the complaint.

B.  Fair and Impartial Investigation - Harassment complaints will be investigated promptly, fairly and objectively.

C.  Confidentiality During an Investigation - To the extent possible and consistent with ascertaining the facts, complaints will be processed confidentially, but all complaints will be investigated in the manner described in these policies.

D.  Interim Action - An Appropriate Management Representative within the work unit may take appropriate interim action while the investigation is pending. No punitive or retaliatory action will be taken for filing a complaint.



**PERSONNEL MANAGEMENT SYSTEM**

SECTION:     300 – General Personnel Policies        POLICY NUMBER: 320

SUBJECT:     **Harassment Policy (sex, race,**          PAGE 8 of 10
             **color, religion, national origin,**
             **age, gender and disability)**

EFFECTIVE DATE: 2/22/99          REVISION DATE: _____

---

IX.    **CONCLUSION OF INVESTIGATION**

    A.    <u>Report of Factual Findings</u> - The investigator assigned to investigate the harassment complaint will prepare  a Report of Factual Findings.  The Report of Factual Findings will include a conclusion as to whether the alleged conduct occurred or not and a recommendation as to the appropriate action to take.   The Report will be submitted to the Appropriate Management Representative within the work unit, and a copy will be submitted to the Administrator of the Shelby County Human Resources Department.

    B.    <u>Management Responsibility Upon Receipt of Report of Factual Findings</u> - Management has two (2) responsibilities upon Receipt of the Report of Factual Findings:

        1.    The Appropriate Management Representative within the work unit will review the Report of Factual Findings and determine whether corrective action is appropriate; and

        2.    The Appropriate Management Representative will communicate to the complainant and alleged harasser in writing the results of the investigation and actions to be taken.

        3.    <u>Corrective Measures</u> - Individuals found to have engaged in conduct that violates County policy will be disciplined, up to and including termination. Management reserves the right to take remedial actions which may include but is not limited to written reprimand, referral to counseling, withholding of promotion, reassignment, temporary suspension without pay, reduction in grade or termination.  All actions shall be in accord with County Personnel policy.

    D.    <u>Inconclusive Finding</u> - If the investigator cannot determine whether the conduct occurred or not, the Manager shall communicate this finding to both parties in writing.

X.    **PROTECTION AGAINST RETALIATION**



**PERSONNEL MANAGEMENT SYSTEM**

| | | |
|---|---|---|
| SECTION: | 300 – General Personnel Policies | POLICY NUMBER: 320 |
| SUBJECT: | **Harassment Policy (sex, race, color, religion, national origin, age, gender and disability)** | PAGE 9 of 10 |
| EFFECTIVE DATE: 2/22/99 | | REVISION DATE: _____ |

Retaliation against any employee making a harassment complaint or assisting in an investigation is strictly forbidden. Retaliation is a serious violation of this policy and should be reported immediately in accord with the Complaint Procedures in Section VII. Any person found to have retaliated against an individual will be subject to discipline.

## XI. OTHER MANAGEMENT RESPONSIBILITIES

A. All members of Management have the dual responsibility of maintaining a work place free of harassment and preventing harassment in the workplace.

B. Where a Management Representative **observes, hears, or knows of conduct** that could be reasonably perceived as a violation of this policy, it is his or her responsibility to report that conduct to the appointing authority who has jurisdiction of the employees involved in the conduct.. Additionally, where Management **should have known about such conduct** in violation of this policy or upon reasonable inquiry could have been made aware of the conduct and failed to make such an inquiry, the Manager will be deemed in violation of this policy and will be disciplined.

C. Violation of any provision of this policy will subject a Management Representative or other employee to disciplinary action up to and including termination.



# PERSONNEL MANAGEMENT SYSTEM

| | | |
|---|---|---|
| SECTION: | 300 – General Personnel Policies | POLICY NUMBER: 320 |
| SUBJECT: | **Harassment Policy (sex, race, color, religion, national origin, age, gender and disability)** | PAGE 10 of 10 |

EFFECTIVE DATE: 2/22/99          REVISION DATE: _____

## XII.   HARASSMENT TRAINING

The Shelby County Department of Human Resources may be contacted by a Management Representative for additional training of employees.



Renee Allen-Walker
Office of Equal Opportunity Compliance
Shelby County Government
160 North Main Street, Suite 200
Memphis, TN 38103

December 20, 2022

**VIA EMAIL AND HAND DELIVERY**

Ms. Qur'an Folsom
Chief Administrator
Shelby Board of Commissioners
Shelby County Government
160 N. Main Street, Suite 600
Memphis, TN 38103

RE:  Response to Investigation Results of Discrimination Complaint of EOC Administrator/Office

Dear Chief Folsom:

I am in receipt of the Decision Letter and results of the investigation into my formal complaint of gender discrimination, sexual harassment and hostile work environment dated December 14, 2022.  I am writing to respond to the Investigation Summary and to correct some inaccuracies contained in this report. First, the report seems to imply that I have had "no prior engagement" with Diversity Supplier. Nothing could be further from the truth.  Prior to accepting this position in which I currently serve, I worked eight (8) years as a Senior Assistant County Attorney where I represented the County Human Resource Department and have been an Administrator for County Government for the last ten (10) years.  It does not take experience in the Diversity Office to recognize inappropriate behavior.

Second, the report indicates that as a part of the investigation, "you met with me on two separate occasions." That is not accurate.  My only meeting with you occurred on September 6, 2022, at 2p.m.  You approached me during a Commission Committee Meeting on September 22, 2022, and told me that the new Chairman and you would like to meet with me on the following Monday, however, that meeting never materialized.  I did not know that the meeting on September 6, 2022, was part of a formal investigation.  You directed me to a seat in the middle of an open space on the 6th floor of our building, as other staff and commission members were passing in and out.  We never the discussed the details of my Complaint, nor did you request a list of witnesses or other evidence that could have been in my possession.

Third, you asked why I did not bring my concerns to you before sending my original Complaint, as you are the boss of Mr. Wilbun, EOC Administrator, as well as my boss.  You told me that I did not report to Mr. Wilbun but rather to you and the Board of Commissioners. However, I followed the Shelby County Harassment policy by reporting my Complaint directly to the Administrator of EOC. The conversation on September 6, 2022, continued with you asking me,

1

to give. Further, you told me that my position should never have been a grade above the Administrator and that this had to change. I find it interesting that Mr. Wilbun was the Chief Supplier Diversity Officer for more than three years, at the same pay grade that I have, and the former Administrator, Carolyn Watkins, was at the pay grade of (59) fifty-nine until her retirement in May 2021. There was never an issue with this structure until the genders of the positions switched; I felt as though these comments were made to imply that my job was in jeopardy.

You ended our conversation by stating, "I will not recommend that you be fired." We both know that to make comments about firing ME after my complaints can in fact, be perceived as retaliation in an of itself designed to chill my ability to engage in protected activity. See, *Torres vs Precision Industries*, (Tenn . Ct. Appeals 2014).

Finally, I must also address your statement that I did not appreciate working with the staff as assigned by the Administrator because I believed that I reported to the Shelby County Board of Commissioners via its Commission Chairman and not the EOC Administrator. This statement is utterly false. I have always made it a practice to participate in all office meetings and activities and have never refused to obey Mr. Wilbon's directives, even though he often gave me assignments he considered traditional "female functions." Wilbun has made comments in the past the a "man" should be in charge of our office. The duties that he has given me to perform are not within my job description. From my start date, I always wanted to be a part of the team but was intentionally left out of meetings, ostracized and given the "cold-shoulder" by the Administrator, as was stated in my original Complaint.

These continued actions of harassment and harmful conduct, despite my Complaint, have not only failed to be properly addressed by an independent investigator. Moreover, the actions of Shelby County Government, taken at this point (approximately (140) days from the date of my Complaint), have only resulted in painting me as the villain as opposed to the victim in this matter. I am disappointed but I believe that I have exhausted my administrative remedies in this matter will pursue my legal remedies externally.

I would like to have this response included in any file on this matter as well.

Regards,

*Renee Allen-Walker*
Renee Allen-Walker
Chief Supplier Diversity Officer

CC:    Florence M. Johnson, Attorney





# SHELBY COUNTY BOARD OF COMMISSIONERS
### SUITE 600 · 160 N. MAIN STREET · MEMPHIS, TENNESSEE 38103

December 14, 2022

Ms. Renee Allen-Walker,
Chief Supplier Diversity Officer
Shelby County Board of Commissioners
Office of Equal Opportunity Compliance
160 N. Main Street, Suite 200
Memphis, TN 38103

RE: Investigation Results of Discrimination Complaint of EOC Administrator/Office

Dear Ms. Allen-Walker,

As the Chief Administrator for the Shelby County Board of Commissioners, I was charged with investigating your complaint regarding alleged discriminatory practices by the Equal Opportunity Compliance Officer, Mr. Shepperdson Wilbun. I was in receipt of your complaint early September. You and I spoke on two separate occasions about the matter and I communicated to you that I would engage the Commission Chairman once the Leadership elections had concluded on September 12, 2022. That was done and I communicated directly with the Chairman who gave me the go forward to investigate. Due to actions later taken by you that involved a letter from an Attorney being sent to the County Attorney's office, this investigation was delayed for a period of time while that was reviewed.

Over the course of my investigation, I have consulted with the Shelby County Human Resources Department. Additionally, the core portion of my investigation centered around five separate interviews of staff within the EOC Office who work directly with you and Administrator Wilbun.

After speaking with the five members of the EOC staff and Administrator Wilbun regarding the allegations included in the complaint that you forwarded to him as your supervisor, I have concluded that the complaint of sexual harassment and gender discrimination could not be substantiated by your statements solely. Also, the staff interviews did not reveal *any* evidence of individual instances or patterns of sexual harassment or gender discrimination. What was revealed through my interviews is that 1) the office needs training to ensure that the professionalism within the office setting is properly maintained at a high level 2) you did not appreciate working with the staff as assigned by the Administrator because you believed that you reported to the Shelby County Board of Commissioners via its Commission Chairman and not the EOC Administrator and 3) you believed you should engage more directly with the Administrator to obtain the information and guidance necessary to perform successfully in your new role. These revelations came about from conversations with Administrator Wilbun and the from the interviews conducted with key EOC staff who worked with you and

Administrator Wilbun directly. When I specifically asked the staff if you and Mr. Wilbun ever met together regarding any matters within the office, the answer was that you had on multiple occasions and in your office more specifically. Thus, statements of feeling ignored by the Administrator and put off upon subordinate staff instead seemed to be contradictory.

It is understandable as a new employee in an office where you have no prior engagement that you would feel it necessary to have more one-on-one interactive contact with the person in the lead role. It is equally understandable that the Administrator connect you directly with the staff in the office who he believed were the most knowledgeable about the inner workings of the office and the programs of which it has full charge. You mentioned the Contract Compliance Officer being given more access to the Administrator and that it felt the staff member was engaging in work that you should have been actively involved. In this instance, I found that you are correct; however, the circumstances of this happening were of no fault of Administrator Wilbun, the Contract Compliance Officer nor you of which I will explain in a separate communication.

Thus, the remedies that will be put into place will be the following:
1) Training will be provided in the areas of professionalism, sexual harassment and emotional intelligence per the direction of Chairman Lowery for all staff under the authority of the Shelby County Board of Commissioners Office.
2) A separate communication regarding the reporting structure of the EOC Office will be communicated to all appropriate parties including the Commission Chairman, the Director of Human Resources and the Senior Staff of the EOC Office.

Please note that Shelby County policies strictly prohibit any retaliation against you for making these complaints. If you feel there are any such issues going forward, please do not hesitate to contact me or any appropriate person as set out in County policies.

Thank you for letting us know your concerns, and we hope this will allow us all to move forward in a productive and professional manner.

Sincerely,

Qur'an N. Folsom,
Chief Administrator
Shelby County Board of Commissioners



Chief Administrator
Shelby County Board of Commissioners
160 N. Main Street, Suite 600
Memphis, TN 38103
quran.folsom@shelbycountytn.gov
901-222-1000 main
901-222-1089 direct
901-222-1002 fax

**From:** Allen-Walker, Renee <Renee.Allen-Walker@shelbycountytn.gov>
**Sent:** Thursday, June 22, 2023 10:05 AM
**To:** Folsom, Quran <Quran.Folsom@shelbycountytn.gov>
**Subject:** RE: Inboxes for EOC

Good Morning, Chief Folsom,

I was instructed on March 10, 2023 that you would be my direct supervisor until further notice. When we met on April 11, 2023, you mentioned to me that you knew very little about the role of the Chief Supplier Diversity Officer (CSDO), but stated that I should attend all of the Commission Meetings, which I have done. All of my instructions now seem to flow from Vincent Moody, Contract Compliance Officer, to Shep Wilbun, EOC Administrator, then channeled through you for assignment to me. Unfortunately, as to my situation as presented in my original Complaint, nothing has changed. I am still being ostracized, demeaned, and harassed by my harasser, Mr. Wilbun.

As an example, in the email dated June 9, 2023, Mr. Wilbun stated that he and Vince Moody met with ACCA representatives and were given the opportunity to place two ads in their upcoming Conference Brochure due to the substantial donation from Shelby County Government. Vince Moody, in a very condescending manner, told Mr. Wilbun that the Ad was "outreach" and fell under the auspices of the Chief Supplier Diversity Officer (CSDO). Mr. Wilbun agreed and requested that you assign me the task of writing the Ad. I was not included in this or any meetings between Mr. Wilbun and Mr. Moody. Mr. Moody's assessment of my job responsibilities is misplaced and inaccurate. The writing of this Conference sponsorship advertisement has nothing to do with vendor outreach efforts, nevertheless, Mr. Wilbun took Moody's word at face value and submitted such to yourself. You agreed that I should take on the responsibility and I accepted it without complaint.

On June 9, 2023, you, as Chief Administrative Officer (CAO), over all County Commission Staff, including the EOC Office, directed Thaddeus Morgan, a clerical employee, to assist me with simplifying the mass vendor outreach announcements, which was a reasonable request. Again, Mr. Wilbun met with Vince Moody, absent my presence and/or input and objected to your request for clerical assistance, as he as the EOC Administrator, should alone assign tasks to EOC staff, including Mr. Morgan. I have worked with Mr. Morgan on multiple projects, and he is always willing to assist me. We even discussed the mass mailings project and he had some great ideas for how to go about this. Now, after consulting with Mr. Moody, Mr. Wilbun has determined Mr. Morgan should not assist me.

Everything alleged in my original complaint is continuing and becoming more exacerbated. It is apparent that Mr. Wilbun is relying on Mr. Moody regarding anything that affects me in this office. Mr. Moody's motives are self serving, at best. Further, all communication regarding this office flow through Mr. Wilbun and Mr. Moody. This pertains not only to the duties of this office but the duties they inaccurately interpret I should have. It is my understanding that my job assignments should come directly from you as was communicated by the Commission Chairman's email I received on March 10, 2023; not from co-workers.

5

I mentioned to you during our meeting on April 11, 2023 that the atmosphere in this office has become increasingly hostile towards me; for example: About a month ago, I noticed that most of the certification staff were away from the office. When I inquired about their whereabouts I was told that they were in Scottsdale, AZ for B2G Training. During my attendance in one of the virtual B2G staff trainings, I heard the presenter mention several training opportunities, but I was not made aware that the office had approved the in-person training in Scottsdale, AZ for EOC staff. This training would have been very beneficial in my role as CSDO, especially as pertaining to the communications at hand regarding my outreach efforts and essential job duties.

For the past few weeks, the office has held group sessions with B2G in the conference room. I was out of the office on sick leave due to eye surgery and just returned Wednesday morning, June 21, 2023. When I asked Mr. Moody whether we were meeting as a group, he very rudely and loudly told me to read my emails. He has become increasingly hostile towards me. The hostilities he exhibits towards me flow directly from the actions of the EOC Administrator.

Further, last week, Carolyn Griffin, Administrative Aide, approached me regarding a vendor fair hosted by MLGW. She stated, "Normally, I do the set up and prep for these events, but Shep told me to make you do it, so that's what I am going to do." I did call the facility regarding a set up time and to determine what was needed from this office. I could not be there because of planned surgery during that time. I did what I could do, even though she admitted that normally she would perform such tasks. This is an ongoing issue as it pertains to my job duties. Work outside of my job duties and description continue to be handed to me as though I am the catch all. These assignments continue to be placed in my purview by the direction of Mr. Wilbun. I complete the task as they are to be fulfilled; however, I am well aware of my job duties and what I am to be doing. By Mr. Wilbun, clerical employees are free to pass their clerical work off to me. Moreover, by the ill-advised advice of Mr. Moody, I am directed to handle the work of others. The work presented has come form Mr. Wilbun by way of Mr. Moody and directed to you to assign to me.

In addition, on June 21, 2021, Sylvester Bernard showed me some ACCA Membership cards that he said Debbia Strong, Secretary, passed out to employees last week. I did not receive an ACCA membership card. Mr. Bernard told me that he did not ask for the membership card, they were just passed out. When I asked Debbia whether she had an ACCA membership card for me, she told me that she did not receive a requisition to request one for me.

As the CSDO, I am in need of clerical assistance from time to time. I feel I am an island to myself, yet Vince Moody is dictating to Mr. Wilbun and then to you, what they believe I should be doing. I have been denied assistance by Mr. Wilbun. Mr. Wilbun and Mr. Moody are continuing to collude and plot on ways to make my job more burdensome and tedious and to exclude me from all of their meetings. This is a continuation of my formal complaint. Though you have directed me to report to you, all of my duties have come from Mr. Moody and Mr. Wilbun. Such communication has been hidden from me not only as it pertains to the EOC but as it pertains to my specific job duties. I cannot find a reason as to why my work assignments are presented to me by an individual that would classify as a subordinate. More importantly, I take issue with the fact that Mr. Wilbun would take such ill-advised and incorrect information from such co-worker and present it to you; which in turn is assigned to me.

To this point, I have tried not to complain and to do as Mr. Wilbun, Mr. Moody, and yourself have told me to do, as illustrated by the burdensome and tedious Matrix and ACCA Advertisement, of which neither relate to the essential functions of my job responsibilities. Again, this is a continuation of harassment and a showing of retaliatory action stemming from my original complaint to make my employment and personal life as miserable as possible; except this time Wilbun is using Moody and you his conduits.

Regards,

Renee Allen-Walker

Chief Supplier Diversity Officer
Office of Equal Opportunity Compliance
Shelby County Government
160 N. Main Street, Suite 200

**MICHELLE A SHELTON, MD, LLC**
5146 STAGE STE 101, MEMPHIS, TN 38134-3139

**Office Form Note**

**DEBORAH ALLEN-WALKER**
MRN :

Birthday : **1959-10-01**
Visited on: 2023 Aug 30 18:45 (Age at visit: 63 years)

Phone : **9017595793**
Electronically signed by: MICHELLE SHELTON, MD on 2023-08-30 07:33 PM

Form

To Whom It May Concern:

I am writing concerning my patient Ms. Deborah Renee Allen Walker . She is under my care for anxiety and depression . She is also under the care of a specialist for severe glaucoma. Unfortunately, she has been unable to take the standard treatment for anxiety and depression due to the medications exacerbating her glaucoma. After many office visits and interviews, it has been determined that her main source of stress is her work environment. She was able to tolerate the adverse work conditions with her medication however, due to the conflict of her medication side effects and her glaucoma condition, she is unable to continue with medication management. Regrettably, this leaves her in an untenable position: continue working in a stressful environment and take medication to allow her to function though it is making her go blind or resign her position to maintain her mental health and vision.

My recommendation, for the best health of Ms. Allen Walker, is to resign her position if no substantive changes can be made to the overall culture of her current work place.

With sincere concern and regard,

Michelle A. Shelton, MD

EXHIBIT
H



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Memphis District Office
200 Jefferson Ave, Suite 1400
Memphis, TN 38103
(901) 685-4599
Website: www.eeoc.gov

### DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/29/2023

**To:** Deborah Allen-Walker
5462 Philgrove Way
Memphis, TN 38125
Charge No: 25A-2023-00196

EEOC Representative and email:     JULIENNE SMITH
State, Local and Tribal Coordinator
julienne.smith@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge. The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)



If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission.

Digitally Signed By Edmond Sims
08/29/2023

Edmond Sims
Acting District Director

Cc:
Joe Leibovich
Shelby County Government
160 North Main Street, 9th Floor
Memphis, TN 38103

Please retain this notice for your records.