IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| DEBORAH ALLEN-WALKER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-2746-SHM-atc |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

This is an employment discrimination case brought by Deborah Allen-Walker against Shelby County Government. Before the Court are Defendant's January 22, 2024 Motion to Dismiss Complaint for Failure to State a Claim and Defendant's February 21, 2024 Motion to Dismiss Amended Complaint for Failure to State a Claim. (ECF Nos. 12, 14.) Plaintiff's original complaint, filed on November 27, 2023, has been superseded by her amended complaint, filed on February 16, 2024. (ECF Nos. 1, 13.) Defendant's earlier Motion to Dismiss, directed at Plaintiff's original complaint, is DENIED AS MOOT. (ECF No. 12.) For the reasons below, Defendant's second Motion to Dismiss, directed at Plaintiff's amended complaint, is DENIED. (ECF No. 14.)

I.    **Background**

Plaintiff sued Defendant on November 27, 2023. (ECF No. 1.) Defendant moved to dismiss Plaintiff's complaint for failure to state a claim on January 22, 2024. (ECF No. 12.) Plaintiff filed an amended complaint on February 16, alleging the following. (ECF No. 13.)

Plaintiff, a black woman, was hired as the Chief Supplier Diversity Officer ("CSDO") for Defendant's Equal Opportunity Compliance Office ("EOC") on June 16, 2021. (Id. at ¶ 7.) Plaintiff was directly supervised by EOC Administrator Shepperson Wilbun. (Id. at ¶ 8.) From the beginning of her employment, Plaintiff was subject to "unfair employment determinations." (Id. at ¶ 10.) Wilbun was "consistent and outspoken" in his belief that Plaintiff's job should be held by a man, and he made "ongoing" allegations that Plaintiff only had her job because of her sexual relationship with Eddie Jones, the Chairman of the Shelby County Board of Commissioners. (Id. at ¶ 18.) Plaintiff does not, and has never had, a sexual relationship with Chairman Jones. (Id.)

Wilbun failed to provide Plaintiff with the support and guidance necessary to perform her job, and "consistent[ly]" assigned Plaintiff "menial tasks that could be performed by a clerical worker," although she was a licensed attorney with twenty years of human resources experience. (Id. at ¶¶ 9, 18.)

For example, Wilbun required Plaintiff to "cove[r] the front desk while the receptionist was on break, mak[e] copies, tak[e] notes at meetings, assist [Wilbun's] secretary, and organiz[e] binders." (Id. at ¶ 13.) Those tasks were not part of the CSDO's job responsibilities, but Wilbun refused to speak with Plaintiff about the expectations for her position. (Id. at ¶¶ 11, 13.) In November 2022, Wilbun gave Plaintiff the "clerical and tedious" project of developing a matrix of minority vendors and the services they provide, although that was not the type of project assigned to the CSDO in the past. (Id. at ¶ 20.) Wilbun did not assign such tasks to male employees. (Id. at ¶ 14.)

The projects typically assigned to the CSDO, such as increasing diverse spending in county contracting programs and determining relevant goals, were reassigned to Plaintiff's male colleague, Vincent Moody. (Id. at ¶ 12.) Based on the EOC's organizational chart, Moody was supposed to report to Plaintiff. (Id. at ¶ 15.) Wilbun reorganized the chart so that Moody reported directly to Wilbun, and it was "understood" that Wilbun did so because Moody did not want to report to a woman. (Id.) Plaintiff believed that "Wilbun intended to set Plaintiff up to be terminated" and replaced by Moody. (Id. at ¶ 19.)

On August 8, 2022, Plaintiff sent an internal grievance to Wilbun raising the issues she has alleged in her amended

complaint.  (Id. at ¶ 17.)   The grievance was forwarded to Human Resources on September 2, 2022 -- twenty-five days after the grievance should have been sent under EOC policy -- and Human Resources failed to respond "substantive[ly]".  (Id. at ¶ 21.) The Shelby County Commission Chief Administrator, Qu'ran Folsom, investigated Plaintiff's complaint, but did not respond until December 14, 2022.  (Id. at ¶ 23.)   The response was "riddled with inconsistencies, contained false statements, and was completely inadequate," and no further action was taken.  (Id.) When Plaintiff responded to the report, she "felt pressured not to escalate her grievance and was told that there would be no recommendation that Plaintiff be fired because of her grievance."  (Id. at ¶ 24.)

After the investigation, Plaintiff was "isolated, belittled, and disrespected by Wilbun and his staff at his direction on a regular basis."  (Id. at ¶ 26.)   Plaintiff filed a second grievance on June 22, 2023.  (Id. at ¶ 27.)   Folsom responded that Wilbun had been advised about the projects that were appropriate for Plaintiff's position, but no other action was taken. (Id. at ¶ 28.)

Wilbun's actions caused Plaintiff severe anxiety and high blood pressure, and her physician ultimately recommended that Plaintiff resign for the sake of her health.  (Id. at ¶¶ 30-32.) Plaintiff's physician explained that Plaintiff could not undergo

the typical treatment for anxiety and depression because the medication aggravated her glaucoma, putting her at risk of going blind. (Id. at ¶ 32.) Plaintiff resigned on September 30, 2023 and asserts that she was constructively discharged. (Id at ¶ 33.)

Plaintiff brings claims for unlawful termination of employment under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. (Id. at ¶ 3.) Plaintiff alleges that she was constructively discharged on the basis of gender discrimination and in retaliation for reporting the discrimination. (Id. at ¶¶ 40-59.)

Defendant moved to dismiss Plaintiff's amended complaint on February 21, 2024. (ECF No. 14.) Plaintiff responded on March 18, 2024, and Defendant replied to the response on March 27, 2024. (ECF Nos. 15, 16.)

## II. Jurisdiction

### A. Federal Question Jurisdiction

District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The Court has original jurisdiction over Plaintiff's Title VII claims. (ECF No. 13 at ¶ 3.)

### B. Supplemental Jurisdiction

5

A district court can exercise supplemental jurisdiction over claims that are so related to the claims forming the basis of original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." Kubala v. Smith, 984 F.3d 1132, 1137 (6th Cir. 2021). Plaintiff's federal and state claims arise from the same set of facts, namely, the alleged gender-based discrimination and retaliation she faced as the CSDO for the Shelby County EOC. Id. Title VII and the THRA claims implicate the same legal standards, and all facts that are relevant to one set of claims will be relevant to the other. Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001). The Court has supplemental jurisdiction over Plaintiff's THRA claims. (ECF No. 13 at ¶ 3.)

**III. Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss permits "a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss tests only whether the plaintiff has

pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[The] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 544.

The court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir. 2020) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations, but does not accept legal conclusions or unwarranted factual inferences. Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018). A court may consider the complaint as

well as any exhibits attached to it or items in the record of the case.  Bassett v. Ntl. Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

To establish a prima facie case of discrimination under Title VII, a plaintiff may produce either direct or circumstantial evidence.[1]  Redlin v. Grosse Pointe Pub. Sch. Sys., 921 F.3d 599, 606 (6th Cir. 2019).  If a plaintiff has not produced direct evidence of discrimination, she can make a prima facie case of discrimination using indirect or circumstantial evidence.  Id.  A plaintiff must show that: (1) she was a member of a protected class; (2) an adverse employment action was taken against her; (3) she was qualified for the position; and (4) she was treated differently than similarly situated employees who were not part of her protected class.  Id. at 606-07 (explaining that establishing a prima facie case is the first step in the burden-shifting framework established by McDonnell Douglas v. Green, 411 U.S. 792 (1973)).

The prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading standard, and a plaintiff need not plead facts supporting each element to survive a motion

---

[1]  The THRA is governed by the same standards as federal anti-discrimination law.  Newman, 266 F.3d at 406.  The law and analysis in this Order apply with equal force to Plaintiff's Title VII and THRA claims.

to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002).

### IV.  Analysis

#### A. Plaintiff Has Adequately Pled Constructive Discharge

Plaintiffs who have resigned from their positions instead of being terminated may be able to show that they experienced an adverse employment action because they were constructively discharged.  Logan v. Denny's, Inc., 259 F.3d 558, 560 (6th Cir. 2001).  To establish constructive discharge, a Plaintiff must demonstrate that her employer intentionally created working conditions that a reasonable person would find intolerable and that it did so for the purpose of forcing her to quit.  Id. at 568-69.  The Sixth Circuit has held that the following factors are relevant in determining whether an employee was constructively discharged:

> "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."  Id. at 569.

**1. Plaintiff Has Adequately Pled That Her Working Conditions Were Intolerable**

Defendant argues that Plaintiff's claims fail because she did not suffer an adverse employment action. (ECF No. 14-1 at 3.) Defendant asserts that Plaintiff was not constructively discharged because her employment conditions were so intolerable that a reasonable person would resign. (Id. at 3-4.) Defendant emphasizes that Plaintiff was unable to take medicine to treat her anxiety and depression because the medicine exacerbated her glaucoma and that, had she been able to take the medication, she could have continued working. (Id. at 5.) Thus, Defendant reasons, "Plaintiff's working conditions were NOT so intolerable that a reasonable person would have been forced to resign," but rather "due to Plaintiff's unrelated glaucoma, she was unable to take medication that would have allowed her to continue working." (Id.)

Plaintiff has pled sufficient facts to show that a reasonable person would have found her employment conditions so intolerable that she would be forced to resign. The Sixth Circuit has identified seven factors that are relevant to determining whether an employee has been constructively discharged. Logan, 259 F.3d at 568-69. Plaintiff has pled facts supporting three of them. Id.; cf. Carlisle v. Staffing

Solutions Se., Inc., No. 1:16-CV-00334, 2017 WL 2274995, at *3
(E.D. Tenn. May 24, 2017) (finding no constructive discharge
where plaintiff failed to allege any of the seven relevant
factors); Littlejohn v. Montgomery Cnty. Treasurer, No.
3:16-cv-00350, 2017 WL 2861183, at *3 (S.D. Ohio Jul. 5, 2017)
(finding no constructive discharge where plaintiff pled only one
of the seven relevant factors).  To establish each of the three
factors, Plaintiff has identified numerous specific examples and
has alleged that the behavior was consistent or repeated.

First, Plaintiff has alleged that Wilbun reduced
Plaintiff's job responsibilities.  Id.  Plaintiff has alleged
that Wilbun "consistently" reassigned her work to Moody,
including "collaborating with the Purchasing Administrator to
determine percentage goals and to increase diverse spending in
County contracting programs." (ECF No. 13 at ¶ 12; No. 13-7 at
1.)  Plaintiff has alleged that Wilbun reduced the number of
people Plaintiff supervised, restructuring the office so that
Moody could report directly to Wilbun instead of to Plaintiff.
(ECF No. 13 at ¶ 15.)  Plaintiff has provided multiple examples
of important meetings, email discussions, and training
opportunities from which she was excluded.  (ECF No. 13-3 at
2-3; 13-7 at 1-2.)

Second, Plaintiff has alleged that she was reassigned to
menial or degrading work "on a regular and consistent basis."

(ECF No. 13 at ¶ 13); Logan, 259 F.3d at 568-69. She asserts that she was required to make copies, take notes at meetings, help Wilbun's secretary, organize binders, and work the front desk when the receptionist was unavailable. (ECF No. 13 at ¶ 13.) Plaintiff describes a particular project that required developing a matrix of local minority vendors, which she described as "clerical and tedious." (Id. at ¶ 20.) Plaintiff describes being excluded from a work presentation to assist Wilbun's secretary with making copies, only to be told that Wilbun's secretary was attending the meeting and did not have time to help Plaintiff make copies. (ECF No. 13-3 at 2.) Such clerical tasks do not appear in the CSDO job description attached to the complaint. (ECF No. 13-1.)

Plaintiff alleges that she was subject to harassment and humiliation. Logan, 259 F.3d at 568-69. She alleges that Wilbun repeatedly accused her of having an inappropriate sexual relationship with Chairman Jones and made "ongoing" claims that that was why she was hired. (ECF No. 13 at ¶ 18.) Specifically, Plaintiff alleges that Wilbun told other colleagues that Wilbun did not know whether Plaintiff was Chairman Jones's "girlfriend or one of his other women." (ECF No. 13-3 at 3.) Plaintiff describes an incident when Wilbun saw Plaintiff on her way to a meeting with Chairman Jones, gave a "snarky chuckle," and said that the Chairman was "going to be

12

excited" to see her.   (Id.)   Plaintiff alleges that Wilbun harassed and embarrassed her in other ways, for example by telling her and other colleagues that he believed a man should have her job and by telling other coworkers that Wilbun intended to ostracize Plaintiff and make her appear unnecessary.   (ECF No. 13-3 at 1-2.)

Defendant is correct that intolerability is a "demanding" standard and that, to show constructive discharge based on badgering, harassment, or humiliation, Plaintiff must ultimately prove that she was subject to harassment beyond that necessary to show a hostile work environment.   Tchankpa v. Ascena Retail Group, Inc., 951 F.3d 805, 814 (6th Cir. 2020); Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999). Plaintiff alleges numerous examples of the harassment to which Wilbun subjected her, including insinuating that she received her job due to an inappropriate sexual relationship with a public figure.   (ECF No. 13 at ¶ 18); Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982) (holding that a work environment was intolerable, in part, because the employer regularly "impl[ied]" that plaintiff's professional success was due to her "sexual charms").   Considering the amended complaint in the light most favorable to Plaintiff, these specific factual allegations, together with the claim that the harassment was "ongoing," show that Plaintiff was subject to the "repeated

taunting" that makes a working environment intolerable. (ECF No. 13 at ¶ 18); cf. Tchankpa, 951 F.3d at 814 (finding that "isolated instances" of badgering are insufficient to show constructive discharge); Groening v. Glen Lake Cmty. Schools, 884 F.3d 626, 631 (6th Cir. 2018) (finding no constructive discharge based on "isolated instances" of harassment); McKelvey v. Sec'y of U.S. Army, 450 Fed. App'x 532, 535 (6th Cir. 2011).

Defendant's Motion to Dismiss does not substantively address any of these factual allegations, which the Court must accept as true. (ECF No. 14-1.) Defendant's Motion depends on its argument that, because Plaintiff could have continued working if she had taken medications for her depression and anxiety, her working conditions were not intolerable. (Id. at 4-5.) According to Defendant, that Plaintiff could not take such medications without exacerbating her glaucoma shows that Plaintiff's resignation was caused by her illness, not by her working conditions. (Id. at 5.) In other words, Plaintiff's glaucoma made the working environment intolerable because it prevented her from getting the treatment needed to cope with the stress of her job. (Id.)

Defendant cites no law to support its argument that a workplace is "tolerable" so long as employees can continue working with the aid of psychiatric medication, or to support its argument that employees must take that medication or forfeit

their claims of constructive discharge.   The Court has found no law to support those propositions.   Employees are expected to cooperate with their employers to find solutions to workplace disputes.   The Sixth Circuit has emphasized that, "if other forms of relief are available to employees, they are expected to try to resolve the issue instead of resigning." Tomlinson v. Krauss-Maffei Corp., No. 21-6245, 2023 WL 1777389, at *8 (6th Cir. Feb. 6, 2023).   That principle, however, is not unlimited. The law does not require employees to keep working at all costs or forfeit their right to sue.

The Sixth Circuit has found that plaintiffs established constructive discharge, such that they suffered injuries for standing purposes, where adapting to their workplace environment would have required them to choose between their livelihood and deeply held values.   In Savel v. MetroHealth Sys., 96 F.4th 932, 942 (6th Cir. 2024), for example, the Sixth Circuit found that plaintiffs were constructively discharged because their employer required them to get vaccinated against COVID-19 to keep their jobs, although the vaccine violated their religious beliefs. Id.   Plaintiffs resigned before being terminated.   Id.   The court found that their resignations were constructive discharges because plaintiffs had been placed "in the difficult position of choosing between following their religion and keeping their jobs." Id.

15

Although <u>Savel</u> addressed different circumstances, the Sixth Circuit's reasoning is instructive. Plaintiff's doctor concluded that the extreme anxiety Plaintiff experienced as a result of her working conditions was detrimental to her health and that she needed to take psychiatric medication to manage her job-related stress. (ECF No. 13-8.) Her doctor also concluded that Plaintiff was unable to take that medication because the medication exacerbated her already severe glaucoma. (Id.) The <u>Savel</u> plaintiffs were placed "in the difficult position of choosing between following their religion and keeping their jobs." 96 F.4th at 942. Plaintiff was placed in the difficult position of choosing between quitting her job to reduce her anxiety, or keeping her job with the aid of antidepressants, but losing her sight. (ECF No. 13-8.)

A reasonable person would find Plaintiff's working conditions intolerable. Plaintiff's resolution of her dilemma by resigning was a reasonable choice given that her working conditions as alleged would have required her to continue working while taking medication that risked blindness. Defendant's arguments are not well-taken. Plaintiff has pled facts showing that a reasonable employee would have found Plaintiff's working conditions intolerable.

## 2. Plaintiff Has Adequately Pled That Defendant Intended to Force Her to Quit

Defendant argues that Plaintiff has not pled any facts suggesting that Defendant intended to force her to quit. (ECF No. 14-1 at 3.) Plaintiff responds that the Supreme Court has held that plaintiffs need not show an employer's intent to plead a plausible claim of constructive discharge. (ECF No. 15 at 3.) Plaintiff's argument is not well-taken. The Court is bound by Sixth Circuit precedent to the contrary. However, the Court finds that Plaintiff has pled sufficient facts to show that Defendant intended to force her resignation.

Plaintiff relies on Green v. Brennan, 578 U.S. 547, 560 (2016), arguing that she need not show Defendant intended to force her to resign. (ECF No. 15 at 3.) She cites the Supreme Court's statement that an employee need not "come forward with proof -- proof that would often be difficult to allege plausibly -- that not only was the discrimination so bad that [s]he had to quit, but also that h[er] quitting was h[er] employer's plan all along." Green, 578 U.S. at 560. The Supreme Court in Green decided when a discrimination claim based on constructive discharge accrues for purposes of triggering the statute of limitations. Id. It did not address how to state a discrimination claim under Rule 12(b)(6). See generally, id.

The Sixth Circuit has considered whether Green abrogates caselaw requiring a showing of intent to demonstrate constructive discharge, but has never decided the question.

17

See, e.g., Tchanpka, 951 F.3d at 815-16 (acknowledging the questions posed by Green, but resolving the case on alternative grounds).  As recently as February 2024, however, the Sixth Circuit has held that constructive discharge claims "require courts to examine both the employer's intent and the employee's objective feelings," denying a claim based on constructive discharge because the plaintiff had failed to show the required employer intent.  Cooper v. Doglencorp, LLC, 93 F.4th 360, 373 (6th Cir. 2024).  This forecloses Plaintiff's argument that she need not show Defendant intended to force her to resign.  See also Yanick v. Kroger Co. of Mich., No. 23-1439, 2024 WL 1856680, at *7 n.2 (6th Cir. Apr. 29, 2024) (explaining that the Sixth Circuit had not yet addressed whether Green abrogates the intent requirement).

Nevertheless, Plaintiff has pled sufficient facts supporting the contention that Defendant intended to force Plaintiff to quit.  (ECF No. 14-1 at 3.)  Plaintiff asserted, in the internal grievance attached to her amended complaint, that a co-worker told Plaintiff that Wilbun had said he wanted to "set [her] up" for failure and "lobby" the Board of Commissioners to terminate her.  (ECF No. 13-3 at 1.)  Plaintiff represents that multiple coworkers told Plaintiff that Wilbun said he wanted to "shut [her] out, marginalize, and ostracize [her] . . . to make [her] appear unneeded."  (Id. at 2.)  Accepting, for pleading

purposes, that these statements were made, this is direct evidence that Wilbun intended to force Plaintiff to resign or set her up to be replaced.

Plaintiff has also pled sufficient facts to show that Wilbun should have foreseen that Plaintiff would resign based on Wilbun's behavior.  It is a "well-recognized rule" in employment law "that a man is held to intend the foreseeable consequences of his conduct" and that "an employee can establish a constructive discharge claim by showing that a reasonable employer would have seen that a reasonable employee . . . would feel constructively discharged."  Wheeler v. Southland Corp, 875 F.2d 1246, 1249 (6th Cir. 1989.)  Plaintiff has pled that Wilbun "consistent[ly]" said a man should have her job.  (ECF No. 13 at ¶ 18.)  A reasonable employer could predict that, if the employer repeatedly told an employee that the employee's job should belong to someone else, the employee would infer that the employer did not want the employee to work there, and the employee would quit.  Moore, 171 F.3d at 1080-81 (holding that employee was constructively discharged where it was clear that he was "no longer wanted" at his workplace).  Plaintiff has sufficiently pled that Defendant forced Plaintiff's resignation, both by providing direct evidence of Wilbun's motivations, and by showing that a reasonable employer would have foreseen Plaintiff's resignation.

19

**B. Plaintiff Has Adequately Pled That Her Constructive Discharge Was Caused by Gender Discrimination or, in the Alternative, Retaliation for Engaging in Protected Activity**

### 1. Discrimination

Defendant argues that Plaintiff has not shown that any adverse employment action was motivated by gender discrimination, because she has not shown that she was replaced by a man. (ECF No. 16 at 2.) Defendant's argument is directly foreclosed by foundational employment law. A plaintiff seeking to make a <u>prima facie</u> case of discrimination using circumstantial evidence needs to: (1) identify a similarly situated comparator from outside of her protected class who was not subject to an adverse employment action; or (2) show that she was replaced by a person outside of the protected class. <u>Redlin v. Grosse Pointe Pub. Sch. Sys.</u>, 921 F.3d 599, 606 (6th Cir. 2019); <u>King v. Autozoners, LLC</u>, No. 2:15-cv-02269-STA-dkv, 2016 WL 4572239, at *8 (W.D. Tenn. Aug. 31, 2016.) However, "if a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case." <u>Swierkiewicz</u>, 534 U.S. at 511.

Plaintiff's allegation that Wilbun repeatedly said that a man should have Plaintiff's job is direct evidence of discrimination. (ECF No. 13 at ¶ 18.) Even if these statements were considered hearsay, the allegations in a complaint need not

be based on admissible evidence and the use of hearsay is not grounds for dismissal under Rule 12(b)(6). <u>Victor v. Reynolds</u>, 649 F.Supp.3d 499, 522 (E.D. Mich. Jan. 5, 2023) (collecting cases holding the same). Because Plaintiff has direct evidence, she need not also come forward with circumstantial evidence by identifying a similarly situated comparator. <u>Swierkiewicz</u>, 534 U.S. at 511.

## 2. Retaliation

Defendant argues that Plaintiff has not shown that she suffered an adverse employment action in retaliation for engaging in protected conduct, because she has not shown that Defendant took any action that would dissuade a reasonable employee from engaging in protected activity. (ECF No. 14-1 at 6.) The elements of a retaliation claim differ slightly from the elements of a discrimination claim. To state a <u>prima facie</u> claim of retaliation, Plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) Defendant knew about the protected activity; (3) Defendant took an action that was materially adverse to plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. <u>Laster v. City of Kalamazoo</u>, 746 F.3d 714, 731 (6th Cir. 2014). Causation means but-for causation, which "requires proof that the unlawful retaliation would not have occurred in

the absence of the alleged wrongful action or actions of the employer.  Id.

The burden of showing a materially adverse action in the retaliation context is lower than the burden of showing an adverse employment action in the discrimination context.  Id. An act is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of retaliation."  Id.

As with discrimination claims, however, a plaintiff need not plead specific facts meeting each of the elements of a prima facie case, because "the prima facie case is an evidentiary standard, not a pleading requirement."  Lange v. Mich. Dept. of Corr., No. 21-10317, 2021 WL 12245472, at *2 (E.D. Mich. June 8, 2021) (citing Swierkiewicz, 534 U.S. at 510).  Plaintiff need only "allege sufficient factual conduct from which the court may reasonably infer that Defendants retaliated against" her.  Id.

The Court has found that Plaintiff's allegations state a claim for constructive discharge.  Because the standard for constructive discharge is higher than the standard for a materially adverse action, Plaintiff has necessarily also made a showing that she suffered a materially adverse action.  Laster, 746 F.3d at 731.

Defendant argues that, even if Plaintiff has suffered a materially adverse action, she has not shown that it was caused

by any alleged retaliation, because the harassment and exclusion that she characterizes as retaliation began before she filed her grievance. (ECF No. 14-1 at 7.) Defendant is correct that, to state a prima facie case of retaliation, Plaintiff must show that any adverse action would not have occurred but for her protected activity. Laster, 746 F.3d at 731. Allegations that Defendant discriminated against Plaintiff before she filed her internal grievance and continued to do so after she complained necessarily fail to meet the requirement of but-for causation. (ECF No. 14-1 at 7.)

However, Plaintiff has pled that Defendant's alleged discrimination escalated after her internal grievance. (ECF No. 13-7 at 1.) For example, before she filed her grievance, Wilbun assigned some of Plaintiff's work to Moody, a colleague Plaintiff was supposed to supervise. (ECF No. 13 at ¶ 12.) After filing her grievance, Moody began assigning work to Plaintiff. (ECF No. 13-7.) Plaintiff alleges that, after she had filed her grievance, Wilbun went from giving Plaintiff's work to a younger, less experienced male employee to having that employee supervise Plaintiff -- although that employee was originally Plaintiff's subordinate. (Id.) Plaintiff's amended complaint need not contain facts supporting each element of a prima facie case, but must "allege sufficient facts from which the court may reasonably infer that Defendants retaliated

against her." Swierkiewicz, 534 U.S. at 510. Plaintiff's allegations of discrimination, which she alleges worsened after she complained to Folsom, together with a specific example of Defendant's worsening discrimination, state a claim for retaliation.

**V. Conclusion**

Plaintiff has adequately pled all of the required elements of the claims that she was constructively discharged based on her gender and as retaliation for engaging in protected activity. Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim (ECF No. 14) is DENIED. Defendant's earlier Motion to Dismiss Plaintiff's Complaint (ECF No. 13) is DENIED AS MOOT.

IT IS SO ORDERED this 13th day of August, 2024.

_/s/ Samuel H. Mays, Jr._
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE